## In The United States District Court
## For The Western District Of Missouri
## Western Division
## At Kansas City

CITY UNION MISSION, INC.,
   PLAINTIFF,

vs.

MIKE SHARP,
  IN HIS OFFICIAL CAPACITY AS
  SHERIFF OF JACKSON
  COUNTY, MISSOURI,
  AND
  IN HIS INDIVIDUAL CAPACITY,

  AND

JACKSON COUNTY SHERIFF'S
OFFICE,

  AND

JACKSON COUNTY, MISSOURI,

  DEFENDANTS.

CASE NO. 17-cv-662

## Complaint

1. This lawsuit challenges a vague Missouri law that violates the fundamental, constitutional rights of the City Union Mission, Inc., ("Mission") and the Jackson County Sheriff's ("Sheriff") unconstitutional application of the law.

2. Section 566.150.1 of Missouri's Revised Statutes ("the Statute") says persons convicted of certain offenses ("Affected Persons") shall not knowingly be present in or loiter within five hundred feet of any real property comprising any

public park with playground equipment or a public swimming pool. "Loitering" is not defined by the Statute, permitting arbitrary enforcement.

3.     Sheriff Sharp claims the Statute applies to kitchens and shelters of the Mission, even though Mission buildings are being used for religious ministry and not for "loitering." He says either loitering is not a necessary element when the building is even partly within 500 feet of a park, or else that such persons are criminally loitering when present in the Mission's buildings within 500 feet of a park.

4.     As a result, the Sheriff's office has threatened to arrest certain Mission employees or guests on Mission property.

5.     Sheriff Sharp has caused his Office's deputies to conduct unannounced "sweeps" of the Mission's facilities and threaten to arrest any persons covered by the Statute, including Mission employees and guests engaged in religious worship, teaching, service or other ministry activities, and which Sheriff Sharp knows to be constitutionally protected religious activities.

6.     Sheriff Sharp has violated and continues to violate the constitutional rights of the Mission, its employees, and guests, to exercise their religious faith through assembly, corporate prayer, worship and teaching, without coercion or risk of prosecution. He is sued in his official capacity on most counts, and in his individual capacity under Count XIII.

7.     In his official capacity, Sheriff Sharp's interpretations, policies and actions are actions of the Defendant Jackson County, Missouri, and have been supported by Defendant County.

8.      This action is brought under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc; the First and Fourteenth Amendments to the Constitution of the United States through 42 U.S.C. §1983; the Missouri Constitution, Article I, §§ 2, 5, 9 and 10; and the Missouri Religious Freedom Restoration Act, ("RFRA"), §§1.302 and 1.307, RSMo.

9.      The suit seeks declaratory judgment and injunctive relief from this Court as to all defendants; compensatory damages against Defendant Sharp in his individual capacity, and a reasonable attorneys fee, in order to remedy the deprivation of the Mission's constitutional and civil rights.

## JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 1343.

11.     The acts in this suit occurred in Jackson County, Missouri, and Defendants reside in Jackson County, so venue is proper here. 28 U.S.C. §1391(b)(2)

12.     This Court has authority to grant the requested declaratory relief. 28 U.S.C. §2201, *et seq.*, 42 U.S.C. §2000cc *et seq.*

13.     This Court has authority to issue the requested injunctive relief. Fed.R.Civ.P. 65 and 28 U.S.C. §1343(3).

14.     This Court has authority to award the requested damages. 28 U.S.C. §1343(3), and 42 U.S.C. §2000cc *et seq.*

## PARTIES

15. Plaintiff City Union Mission, Inc., ("Mission") is a Missouri nonprofit corporation. Its headquarters are at 1100 E. 11th Street, Kansas City, Missouri.

16. Defendant Sheriff Mike Sharp was the duly elected Sheriff of Jackson County, Missouri, for the relevant period. The Sheriff acts under color of law supplied by Missouri's Constitution, Missouri's statutes, and Jackson County's Charter, ordinances, regulations, and policies.

17. The Sheriff is the chief law enforcement officer of the County and has supervision, management, and control over deputies, County highway patrol, and staff in his department. He offices at 4001 NE Lakewood Court, Lee's Summit, MO 64064, and resides in Jackson County. He is a defendant in his official and individual capacities.

18. Defendant Jackson County Sheriff's Office is the County's law enforcement department ("Defendant Department"), with authority to enforce state and county laws, including §566.150, RSMo.

19. Defendant Jackson County, Missouri, is a county government within the State of Missouri, having adopted a constitutional home rule charter for its governance, pursuant to Article VI, Section 18(a) of the Missouri Constitution.

4

## ALLEGATIONS COMMON TO ALL COUNTS

### CITY UNION MISSION

20. Since 1924, Plaintiff Mission has believed that God called it to serve the poor, homeless, and downtrodden in Kansas City. As an evangelical ministry, it shares the Christian gospel and meets spiritual and physical needs of hurting people.

21. The Mission feeds, houses, and sometimes employs persons who are poor or homeless, including some persons affected by §566.150, RSMo. In the ordinary course, this ministry happens on Mission property that lies (in part) in "the Zone," the area within 500 feet of Margaret Kemp Park.

### CITY UNION MISSION PROPERTY

22. Plaintiff Mission's principal place of business is 1100 East 11th Street, in Kansas City, Missouri. However, the Mission conducts ministry on several nearby properties.

23. The Mission's primary men's shelter has a street address of 1108 E. 10th Street.

24. The Mission operates a "Christian Life Center" ("CLC") with a street address of 1111 East 10th Street.

25. The Mission operates a food distribution center at 1020 East 10th Street.

26. The Mission operates other facilities in the downtown area, including a Women's and Family shelter. For ease of reference, below is a portion of a map from the Jackson County GIS system, (which is also at Exhibit A) highlighting the parcels owned by the Mission in the general vicinity of 10th Street in Kansas City:

5



Figure 1 GIS Map highlighting parcels owned by Mission near 10th Street.

## The Statute, §566.150, RSMo.

27.     In 2009, the Missouri legislature enacted into law §566.150, RSMo., ("the Statute"), and amended it in 2014.

28.     §566.150, RSMo., applies to persons convicted of violating seven Missouri laws, or equivalent laws in other states; the identified laws include §568.045 (endangerment of a child in the first degree), §568.020 (incest), and several others. This Complaint sometimes refers to such persons as "Affected Persons."

29.     §566.150, RSMo., states that Affected Persons "shall not knowingly be present in or loiter within five hundred feet of any real property comprising any public park with playground equipment or a public swimming pool."

30.     The Defendants have referred to Affected Persons as "Registered Sex Offenders," although §566.150, RSMo., applies to some non-sexual offenses and offenses beyond those subject to registration under §§589.400-589.425, RSMo.

31.     §566.150, RSMo., provides that a first violation of the section is a Class E felony, while later violations are Class D felonies. Class E felonies carry sentences of up to four years and Class D felonies up to seven years. *See* §558.011, RSMo.

## Ministry Activities of City Union Mission

32.     Ministry to the poor, homeless and downtrodden (including Affected Persons) is an integral part of the religious exercise of the Mission′s faith and deep convictions.

33.     The Mission is well known for offering food and overnight shelter to homeless persons in the Kansas City metropolitan area, including Kansas and Missouri.

34.     Besides temporary shelter, the Mission offers counseling, case management, and limited medical care.

35.     While accepting the Mission′s food, shelter, and other religious care, Affected Persons do not "loiter" under §566.150, RSMo.

36.     Affected Persons, convicted of the listed crimes, are often subject to residential restrictions. They often lose family, employment, and community support, leading to homelessness and poverty.

37.     The Mission′s religious activity furthers the Statute′s governmental purpose, which is to keep men and women off the streets and in houses, jobs, and accountability programs.

38.    The Mission also offers sustained help to break cycles of poverty, such as its "Christian Life Program."

39.    The Christian Life Program ("CLP") is the Mission's "Biblically based discipleship and rehabilitation program for men who are ready to turn to the Lord to help with the difficulties they have experienced in their lives."

40.    The CLP is a one-year program of daily classes in life skills and addiction recovery, the study of Christian Scriptures, a program of work therapy, individual and group counseling, educational opportunities, career development, and local church involvement.

41.    The CLP asks participants to commit to attend meetings for at least six months, but the program can last up to 14 months.

42.    Most CLP classes take place in the Mission's Christian Life Center at 1111 East 10th Street.

43.    While people take part in the CLP, they are not "loitering" within the definition of §566.150, RSMo.

44.    Also, on one or more occasions since 2009, the Mission has employed Affected Persons.

45.    Where appropriate, the Mission assigns employees to work at its properties like 1108 East 10th Street. While working for the Mission, they are not "loitering" within the meaning of §566.150, RSMo.


### Margaret Kemp Park

46.    The Margaret Kemp Park commemorates the late wife of former Mayor William Kemp. It is two parcels on the north and south of 10th Street. The east

boundary is Harrison Street; its west edge is the "Southeast Freeway," or "downtown loop." The City dedicated a playground in the north parcel as early as 1953.

47. For ease of reference, Figure 2 (also Exhibit B) shows the land within 500 feet of the northwest corner of 10th Street and Harrison Street. This is the closest corner of the park's north, playground-containing lot to the Mission. The map is from the County's GIS service.

48. As Figure 2 shows, the Zone covers some of the building at 1108 East 10th Street. The Zone may catch the corner of the building at 1100 E. 11th Street, though some maps show it a few feet away. The Mission's Christian Life Center, at 1111 East 10th Street, sits on land outside the Zone



**Figure 2 GIS Map highlighting parcels owned by Mission near 10th Street.**

## The County's Interpretative Policy and its Changes

49.    Before May 2016, Defendants did not interpret §566.150, RSMo., to prohibit Affected Persons from working for or seeking religious or other help from Plaintiff Mission.

50.    In May 2016, the Defendants implemented a new interpretation of §566.150, RSMo. It prohibited Plaintiff Mission from allowing Affected Persons to be present on any Mission land in downtown Kansas City, even land outside the Zone. This is the "May 2016 Position."

51.    In support of the May 2016 Position, Defendants claimed that §566.150, RSMo., excludes Affected Persons from the Zone, whether loitering or not. Further, Defendants claimed the Zone extends to other parcels owned by the Mission, even land more than 500 feet from the Park.

52.    Based on the May 2016 Position, Defendants told Plaintiff that Affected Persons violate the Statute by seeking help from the Mission, or by working for the Mission at its Kansas City property.

53.    Based on the May 2016 Position, no Affected Person could seek shelter, food, worship, prayer, or services on Mission land. As a direct result of Defendants' actions, the Mission lost use of its facilities, as it could not minister to Affected Persons on Mission land.

54.    Further, the Mission was denied the use of its facilities, and prevented from offering services or help to Affected Persons, because the Mission could be charged with conspiracy or aiding and abetting a violation of §566.150, RSMo., if it were to encourage Affected Persons to take advantage of the Mission's facilities for ministry services.

55.     Starting about September 2016, Defendants revised the County's policy to be that §566.150, RSMo., only applied to that portion of any parcel within 500 feet of a public park (this is the "September 2016 Position"). The September 2016 Position still prohibited Affected Persons from being present on any portion of a parcel owned by the Mission that is, in whole or in part, within the 500-foot zone, including the main shelter.

56.     On September 9, 2016, Defendants' deputy sheriff wrote an email to the Mission stating: "This is confirmation that the City Union Mission may house [Affected Persons] at their 1111 East 10th Street building but that is the only building they are allowed to be present in. 1108 East 10th is still off limits."

57.     On September 23, 2016, Plaintiff Mission appealed to Defendants for reconsideration of its policy, because the policy and actions were harming the Mission's free exercise of religion by harming "the Mission's ability to offer charity, provide religious worship instruction, and maintain employees." The letter notified the Defendants that the policy substantially burdened the Mission's free exercise of religion on lands owned by the Mission for religious purposes, in violation of federal and state law. A copy of this letter is attached hereto as Exhibit C and incorporated by this reference.

58.     In response to Plaintiff's letter, Jackson County communicated its position through counsel, that the Statute contained a single restriction: being "present" within a 500-foot radius.

59.     On February 8, 2017, Sergeant Russell Beach of the Jackson County Sheriff's Department notified the Mission that Affected Persons were prohibited from working at the Mission's facility at 1108 East 10th Street. An Affected Person

had given the 1108 address as a place of employment, and Beach warned Plaintiff Mission that the Department would issue a citation if the matter were not "cleared up."

60. As a result, Plaintiff Mission has been frustrated in its ability to freely assign the employee to perform lawful work at that property, because the Mission does not want to subject the employee to arrest or prosecution and because the Mission does not want to be charged with aiding and abetting law breaking.

61. In order to avoid violation of the Sheriff's policy and orders, the Mission had to take the following steps:

    A.    Post signs in its emergency facilities that declared the Sheriff's orders about the ban in emergency facilities;

    B.    Open its doors for "sweeps" by the Sheriff's deputies.

    C.    Turn away Affected Persons who need and want Mission ministry services which otherwise would be offered in "banned" premises;

    D.    Withdraw religious and other services or employment for persons who desperately need it.

62. Plaintiff Mission's guests and clients, including Affected Persons, while receiving or providing ministry services on Mission premises, or travelling to or from the Mission for such ministry services, are not "present" in the public park or "loitering" within 500 feet of the park; therefore, their constitutionally protected presence at the Mission cannot be criminalized under §566.150, RSMo.

63. On information and belief, Defendants have not applied the new interpretations, policies or practices alleged herein to any other landowner within 500 feet of Margaret Kemp Park—or any other park in Jackson County.

64. Defendants have not conducted "sweeps" on any other land within 500 feet of Margaret Kemp Park—or any other park playground in Jackson County, so far as Plaintiff knows.

65. Instead, Defendants have intentionally targeted City Union Mission because it practices its religious obligation to help homeless and poor persons in Kansas City, including Affected Persons.

66. Defendant Sheriff Mike Sharp, both officially and personally, has manifested bias against Plaintiff Mission, and has discriminatorily applied the law in an unequal and unfair manner to the Mission and its employees and guests, resulting in substantial harm from the deprivation of Plaintiff Mission's religious liberties.

67. Defendants Sheriff and Department took all actions alleged herein under color of legal authority, interpreting the Statute and implementing policies and practices with the knowledge and support of Defendant Jackson County.

68. Defendants Jackson County and Department receive federal financial assistance.

69. The Defendants' policies and practices affect commerce among the several States.

70. Plaintiff Mission has no adequate remedy at law for the continuing violations of its constitutional rights.

71.     Defendants have offered no facts to support a compelling governmental interest in its interpretations, policies or practices regarding §566.150, RSMo., which would criminalize the mere presence of Affected Persons on the premises owned and operated by Plaintiff Mission as it seeks to exercise its religious ministry.

72.     Defendants' actions are not justified by a compelling governmental interest.

73.     Even if Defendants can assert a compelling governmental interest, the Defendants' interpretation, policies and practices under the Statute are not narrowly tailored to achieve that interest. Moreover, there are less restrictive means available than an absolute ban on presence of Affected Persons who are on the Mission's property engaged in constitutionally protected activity.

74.     Absent injunctive and declaratory relief, the Plaintiff Mission has been and will continue to be harmed by the deprivation of its constitutional rights.

75.     The Statute regulates the Mission's real property. The Sheriff has threatened to arrest Plaintiff's employees and guests under the Statute. The Mission wants to provide work, shelter, food and ministry on its land, but it fears a charge of abetting or conspiring to violate the Statute. Therefore, the Mission has standing to bring suit for itself, its employees, and its guests.

## The United States Constitution

76.     The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

77. The Fourteenth Amendment to the U.S. Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## COUNT I
### Violation of the First Amendment of the United States Constitution
### Free Exercise of Religion
### (42 U.S.C. §1983)

78. Plaintiff incorporates by reference all preceding paragraphs.

79. The First Amendment of the United States Constitution commands that Congress must make no law "prohibiting the free exercise" of religion.

80. The First Amendment applies to state and local governments, including these defendants, by virtue of Fourteenth Amendment under the "incorporation doctrine." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

81. The Free Exercise Clause binds local subdivisions of the state, such as Jackson County, by operation of the Fourteenth Amendment. *See, e.g. Lovell v. City of Griffin, Ga.*, 303 U.S. 444, 450 (1938).

82. As a county government or official agents thereof, Defendants must uphold and protect citizens' First Amendment rights.

83. Congress has provided for challenges to First Amendment violations by government actors. 42 U.S.C. §1983 creates a private right of action against any person who, under color of state law, deprives another of "rights, privileges, or

immunities secured by the Constitution." The private right of action includes "an action at law" and a "suit in equity." *Id.*

84.     Defendants have deprived and continue to deprive Plaintiff Mission, its guests, and its employees of the free exercise of religion, as secured by the First Amendment.

85.     Defendants' policies and practices have imposed a substantial burden on the Mission's sincere religious exercise.

86.     Defendants imposed the burden by an individualized government assessment. The Defendants judged the particular circumstances surrounding the Mission's operations (as explained in the September 23, 2016 appeal letter) and decided to apply the ban to the Mission's activities.

87.     A substantial burden imposed by individualized assessment is subject to strict scrutiny; the burden violates the Free Exercise Clause unless it is the least restrictive means of achieving a compelling government interest.

88.     Defendants' interpretation, policies or practices are not justified by a compelling government interest.

89.     Even if Defendants can assert a compelling government interest, the Defendants' interpretation, policies and practices are not narrowly tailored to achieve that interest.

90.     Absent injunctive and declaratory relief against the Statute and Defendants' interpretation, policies and practices, the Plaintiff Mission has been and will continue to be harmed.

## COUNT II
### VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
### FREE EXERCISE, DUE PROCESS,
### VOID FOR VAGUENESS (FACIAL CHALLENGE)
### (42 U.S.C. §1983)

91.     Plaintiff incorporates by reference all preceding paragraphs.

92.     The Fourteenth Amendment to the U.S. Constitution provides:
"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

93.     §566.150.1, RSMo., states that persons convicted of certain offenses "shall not knowingly be *present in* or *loiter within five hundred feet of* any real property comprising any public park with playground equipment or a public swimming pool." (emph. added).

94.     §566.150, RSMo., is vague and ambiguous about what conduct is prohibited and where conduct is prohibited.

95.     The Statute is vague and ambiguous about the *place* covered, as Defendants assert that the clause "to be present in" modifies the clause "any real property comprising any public park" *and* the clause "within five hundred feet." Plaintiff does not believe this to be a permissible parsing of the Statute; if it is, it is confusing, vague and ambiguous.

96.     Persons of ordinary intelligence must guess at the meaning of "be present" as used in §566.150, RSMo., and must guess whether a person who is outside the

Park and who is not loitering, but engaged in constitutionally protected activity, is, nonetheless, somehow violating the law.

97.    If the restriction "to be present" applies to the 500-foot Zone, then the restriction on loitering adds nothing to the Statute and would be meaningless surplus – it would not matter if the person is loitering, because the Statute prohibits all conduct in the Zone (whether loitering or not).

98.    Further, §566.150, RSMo., does not include or incorporate a definition of "loiter" or "loitering."

99.    Persons of ordinary intelligence have to guess at the meaning of "loitering" as used in the §566.150, RSMo.

100.    §566.150, RSMo., does not give citizens reasonable notice of the conduct prohibited and thereby traps people without fair warning.

101.    §566.150, RSMo., vests unfettered discretion in the County, the Sheriff, or the Department to interpret the Statute's meaning, and gives rise to a likelihood of arbitrary and unequal enforcement.

102.    §566.150, RSMo., provides no guidelines to govern its enforcement by the Sheriff and his Department.

103.    Defendant Jackson County has not restricted the Sheriff's enforcement of §566.150, RSMo.; rather, the County supports the Sheriff in his interpretation and actions.

104.    No set of circumstances exists in which the prohibition of §566.150, RSMo., on "knowingly . . . loiter[ing] within five hundred feet of any real property comprising any public park with playground equipment or a public swimming pool" would be valid, given that the definition does not provide fair warning in any case.

105.   Travelling to the Mission for help or work is not a criminal activity.

106.   Obtaining ministry help from the City Union Mission is not a criminal activity.

107.   Working for the City Union Mission is not a criminal activity.

108.   Participating in corporate religious worship, teaching, prayer, or other ministry activities is not a criminal activity,

109.   §566.150, RSMo., does not provide notice or opportunity for a hearing appropriate to the case's nature.

110.   Defendants have substantially burdened or deprived (and continue to deprive) Plaintiff Mission, its guests, and its employees of the Free Exercise of religion, as secured by the First Amendment.

### COUNT III
#### VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
#### FREE EXERCISE, DUE PROCESS (AS-APPLIED CHALLENGE)
#### (42 U.S.C. §1983)

111.   Plaintiff incorporates by reference all preceding paragraphs.

112.   §566.150.1, RSMo., states that persons convicted of certain offenses "shall not knowingly be *present in* or *loiter within five hundred feet of* any real property comprising any public park with playground equipment or a public swimming pool." (emph. added).

113.   §566.150, RSMo., is clear that the ban on "presence" applies to the public park, while the separate restriction on loitering applies to the 500-foot area ("buffer zone").

114. Persons of ordinary intelligence must necessarily guess at the meaning of "loitering" as used in the §566.150, RSMo.

115. Defendants have interpreted §566.150, RSMo., to contain only one restriction, "being present," regardless of loitering, and have interpreted the ban on presence to apply to the park area and the 500-foot radius, thus extending the ban on presence to certain property owned by the Mission.

116. If the restriction on "being present" applies to the 500-foot buffer zone, then the restriction on "loitering" would be meaningless surplusage, which is how the Defendants have treated it.

117. Plaintiff Mission's employee is not "loitering" while working for the Mission, or travelling to or from the Mission for such work, and therefore the Mission's employee does not violate §566.150, RSMo., when such work or travel causes him to be on the Mission's property, regardless of its distance from a playground-containing parcel.

118. Even if employment or travel by Plaintiff's employees could constitute "loitering," the freedom to loiter for innocent purposes is part of the liberty protected by the Due Process Clause of the Fourteenth Amendment.

119. Persons seeking help from the Mission are not "loitering" while seeking help from Mission, or travelling to or from the Mission for such help, and therefore Affected Persons do not violate §566.150, RSMo., when they travel to the Mission or obtain help from the Mission on the Mission's property, regardless of the distance from a playground-containing parcel.

120. Defendants' application of §566.150, RSMo., in these circumstances to the activities of the Mission, its employees, and its guests, is an unconstitutional

deprivation of Plaintiff's First Amendment rights, including, but not limited to the Free Exercise of Religion, and to Due Process of law.

121.    Defendants' application of the Statute to Plaintiff is arbitrary and capricious, and was adopted without fair notice to Plaintiff and without reasonable opportunity to be heard, and yet Defendants, knowing the application would interfere with Plaintiff's Free Exercise rights, nonetheless enforced this application upon Plaintiff, to its continuing harm.


## COUNT IV
### VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### FREEDOM OF ASSEMBLY AND ASSOCIATION
### (42 U.S.C. §1983)

122.    Plaintiff incorporates by reference all preceding paragraphs.

123.    The First Amendment to the United States Constitution commands that Congress shall make no law "abridging…the right of the people peaceably to assemble…."

124.    The rights to assemble and associate are a fundamental right, applicable to the states by incorporation by the Fourteenth Amendment.

125.    The right of assembly and association exist throughout the community, in public and private spaces. *Healy v. James*, 408 U.S. 169, 180 (1972).

126.    The Statute and Defendant's interpretations, policies and practices have burdened and interfered with Plaintiff Mission's right to assemble and associate with its employees and guests.

## COUNT V
### VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### ESTABLISHMENT CLAUSE
### (42 U.S.C. §1983)

127.  Plaintiff incorporates by reference all preceding paragraphs.

128.  The First Amendment to the United States Constitution commands that Congress shall make no law "respecting an establishment of religion…."

129.  The Establishment Clause prohibits government from enacting or enforcing laws in a manner that advances or inhibits religion, or that intentionally discriminates against religion.

130.  Defendants' interpretation, policies and practices intentionally targeted Plaintiff Mission and inhibited the Mission's religious ministry to Affected Persons.

131.  Defendants' interpretation, policies and practices have demonstrated bias or hostility against the religious ministry of Plaintiff Mission to Affected Persons, and have violated the Mission's rights under the Establishment Clause.

## COUNT VI
### VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
### FREE EXERCISE, DUE PROCESS, EQUAL PROTECTION
### DISCRIMINATORY TARGETING OF PLAINTIFF MISSION
### (42 U.S.C. §1983)

132.  Plaintiff incorporates by reference all preceding paragraphs.

133.  Defendants have targeted Plaintiff Mission, its guests and employees, for discriminatory application of the Statute in its enforcement.

134.    Such targeting by Defendants of a religious ministry is an unconstitutional burden and violation of Plaintiff's constitutional rights, including, but not limited to the Free Exercise of Religion, Due Process of law, and Equal Protection of the law.

## COUNT VII
### RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT SUBSTANTIAL BURDEN PROVISION (42 U.S.C. §2000CC)

135.    Plaintiff incorporates by reference all preceding paragraphs.

136.    The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), prevents the government from imposing a substantial burden on the sincere religious belief of a religious assembly or institution unless the government demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §2000cc(a)(1).

137.    RLUIPA applies whenever (1) the substantial burden "is imposed in a program or activity that receives Federal financial assistance"; (2) the substantial burden "affects, or removal of that substantial burden would affect, commerce…among the several States"; or (3) the substantial burden is "imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses of the property involved."    42 U.S.C. §2000cc(a)(2).

138.     The policy and practices of the Defendants constitute the imposition or implementation of a land use regulation that imposes a substantial burden on the City Union Mission's religious exercise; a burden not in furtherance of a compelling governmental interest or the least restrictive means of furthering such interest, in violation of RLUIPA, 42 U.S.C. §2000cc(a)(1).

139.     Because the County receives federal financial assistance; because the imposition of the substantial burden on the Mission's religious exercise affects commerce "among the several States" with respect to the Mission's ability to employ persons; and because this case arises out of the County's implementation of a land use regulation under which the County made individualized assessments concerning the Mission's use of the property in Kansas City, Missouri, RLUIPA's terms are binding in this case.

140.     Defendants have deprived and continue to deprive the Plaintiff Mission of its right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc (RLUIPA).

141.     The Sheriff and the Department are law enforcement officials for and within Jackson County, with the authority to enforce State and local laws concerning the use of land and structures within its borders, and to enforce §566.150, RSMo.

142.     For purposes of RLUIPA, the County, the Sheriff, and the Department are a "government." 42 U.S.C. §2000cc-5(4)(A)(i),(ii).

143.     For purposes of RLUIPA, the City Union Mission is a "religious assembly or institution." 42 U.S.C. §2000cc(2)(b)(1).

144.    For purposes of RLUIPA, §566.150, RSMo., constitutes a land use regulation under which a government makes, or has in place formal in informal procedures or practices that permit the government to make individualized assessments of the proposed uses on the property involved.

145.    The Mission's religious exercise includes:

A.    The offering and provision of ministry help to persons who are social outcasts.

B.    The offering and provision of help to persons who are homeless.

C.    The offering and provision of emergency temporary shelter to persons who are homeless.

D.    The offering and provision of help to persons who are in poverty or in danger of being in poverty.

E.    The employment of persons consistent with the beliefs and activities of the Mission.

F.    The use of its employees and its property to offer and provide physical and spiritual help, including, without limitation, worship and corporate prayer.

146.    Under §566.150, RSMo., the Mission's religious exercise has been burdened, in that:

A.    It has been unable to offer and provide help to some persons who are outcasts or homeless.

B.    It has been unable to offer and provide help to persons who are in poverty or who are in danger of being in poverty.

C. It has been unable to use its employee to conduct the activities of the Mission on portions of the Mission's property.

D. It has been unable to use portions of the Mission's property for the provision of physical and spiritual help, including, without limitation, corporate worship and prayer.

E. Its activities for the benefit of the homeless, social outcasts, persons in poverty, or in danger of being in poverty have been hindered and limited in scope.

F. The Mission has been required to communicate to persons seeking help that Police may conduct "sweeps" of the facility in their enforcement of §566.150, RSMo., which has caused some Affected Persons to leave or otherwise refuse the Mission's charitable and religious activities.

147. Defendants' actions thus violate the Plaintiff Mission's rights as secured by RLUIPA.

## COUNT VIII
### RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT EQUAL TERMS PROVISION
### (42 U.S.C. §2000CC)

148. Plaintiff incorporates by reference all preceding paragraphs.

149. RLUIPA provides, in part: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. §2000cc(b)(1).

150.    Defendants have not applied the same interpretations, policies, or practices, and have not conducted investigations or "sweeps" of other organizations that own and operated service organizations within 500 feet of Margaret Kemp Park, including, without limit, reStart, Inc.; and MarkOne Electric Co., Inc.

151.    Defendants have implemented the Statute as a land use regulation in a manner that treats Plaintiff Mission on less than equal terms with nonreligious institutions, including the above named two organizations.

152.    Defendants' interpretation, policies, or practices have harmed and will continue to cause harm to Plaintiff.

## COUNT IX
## RLUIPA
### DISCRIMINATION PROVISION
### (42 U.S.C. §2000CC)

153.    Plaintiff incorporates by reference all preceding paragraphs.

154.    RLUIPA provides, in part: "No government shall discriminate against a religious assembly or institution the basis of religion or religious denomination." 42 U.S.C. §2000cc(b)(2).

155.    Defendants have failed to apply their interpretations, policies and practices to nonreligious land users, or to any other secular organizations near the public park, but apply them only to Plaintiff Mission, which evinces discriminatory intent against Plaintiff Mission and its religious commitment to serve Affected Persons.

Case 4:17-cv-00662-BCW   Document 1   Filed 08/09/17   Page 27 of 36

156.    Defendants have failed to adopt interpretations, policies and practices that are required to apply to nonreligious land users on the same terms, which also evinces discriminatory intent against Plaintiff Mission and its religious commitment to serve Affected Persons.

## COUNT X
## RLUIPA
### UNREASONABLE LIMITATIONS PROVISION
### (42 U.S.C. §2000CC)

157.    Plaintiff incorporates by reference all preceding paragraphs.

158.    RLUIPA provides, in part: "No government shall impose or implement a land use regulation that… (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."  42 U.S.C. §2000cc(b)(3)(B).

159.    The Statute or Defendants' interpretations, policies and practices under the Statute as applied to Plaintiff Mission operate as a land use regulation, and constitute an unreasonable limitation on the religious assembly and worship rights of Plaintiff Mission.

## COUNT XI
### MISSOURI RELIGIOUS FREEDOM RESTORATION ACT
### (§1.302, RSMo.)

160.    Plaintiff incorporates by reference all preceding paragraphs.

161.    §1.302, RSMo., (commonly known as Missouri's Religious Freedom Restoration Act) states:

A governmental authority may not restrict a person's free exercise of religion, unless:

1. The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and

2. The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances.

162. The activities of Plaintiff Mission in offering employment, services, shelter, food, help, prayer, and spiritual guidance are actions substantially motivated by religious belief.

163. §566.150.1, RSMo., and Defendants' policy and application of that law, restrict the Free Exercise of Religion of Plaintiff Mission, its employees, and its guests.

164. As a direct result of Defendants' actions, Plaintiff has suffered harm from the deprivation of constitutional rights.

## COUNT XII
### VIOLATION OF MISSOURI CONSTITUTION
### (ARTICLE I, SECTIONS 2, 5, 9 & 10)

165. Plaintiff incorporates by reference all preceding paragraphs.

166. **Article I, §2** of the Missouri Constitution provides:

That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural **right to** life, **liberty**, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to **equal**

**rights and opportunity under the law**; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design. (emphasis added)

167. **Article I, §5** of Missouri's Constitution provides, in part:

That all men and women have a **natural and indefeasible right to worship** Almighty God according to the dictates of their own consciences; that no human authority can control or interfere with the **rights of conscience** ... that the state shall not coerce any person to participate in any prayer or other religious activity, but shall ensure that any person shall have the **right to pray individually or corporately in a private or public setting** so long as such prayer does not result in disturbance of the peace or disruption of a public meeting or assembly.... (emphasis added)

168. **Article I, §9** of the Missouri Constitution provides:

That the people have the **right peaceably to assemble for their common good**, and to apply to those invested with the powers of government for redress of grievances by petition or remonstrance. (emphasis added)

169. **Article I, §10** of the Missouri Constitution provides: "That no person shall be deprived of life, liberty or property without **due process** of law."

170. Plaintiff Mission, its guests, and its employees exercise the constitutional rights protected by the foregoing sections of the Missouri Constitution, including the right to corporate prayer on its private property; the right to worship God according to dictates of conscience, the right peaceably to assemble for the

common good, the right to liberty, the right to due process, the right to equal protection, and other rights contained in the Missouri Constitution Bill of Rights.

171.     The Statute and Defendants' interpretations, policies and practices under the Statute have coerced, interfered with and substantially burdened the exercise of the foregoing rights by Plaintiff Mission

172.     At all times mentioned herein, Plaintiff Mission and its employees have sought to engage in such activities on the subject premises without any disturbance of the peace or disruption of any public meeting or assembly, and Defendants' activities in this Complaint are not based on any disturbance or disruption.


## COUNT XIII
### VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION
### FREE EXERCISE OF RELIGION
### DEFENDANT MIKE SHARP IN HIS INDIVIDUAL CAPACITY
### (42 U.S.C. §1983)

173.     Plaintiff incorporates by reference all preceding paragraphs.

174.     Defendant Sharp is sued in his individual capacity under this count.

175.     Defendant Sharp knew by the clear terms of the law that §566.150, RSMo., does not prohibit Affected Persons from being within 500 feet of a public park if they are working at, or seeking ministry help from, Plaintiff Mission.

176.     Defendant Sharp knew by clearly established law that the restriction on loitering within 500 feet of a public park was undefined, and void for vagueness, and that the Statute was therefore unconstitutional, and enforcing it against Plaintiff Mission would violate constitutional rights to due process of law.

177.   Defendant Sharp knew by clearly established law that Affected Persons who were employees or guests of City Union Mission were engaging in lawful First Amendment religious ministry, on premises owned by a Christian homeless ministry, and that the effort to interfere with or discourage this religious activity would be plainly unlawful and would violate fundamental constitutional rights.

178.   Defendant Sharp intentionally singled out Plaintiff Mission for unfair treatment and intentionally applied an unconstitutional Statute, or applied it in an unlawful and unconstitutional manner, in violation of the constitutional rights of the Mission, its employees and guests.

179.   Defendant Sharp has indicated that he would prefer that all Registered Sex Offenders (which are a subset of persons affected by the Statute) move outside of Jackson County.  His policies and actions seek to advance that agenda and to encourage Plaintiff Mission to abandon its ministry to Affected Persons within Jackson County, and to move them elsewhere.

180.   Defendant Sharp knew or reasonably should have known based on clearly established law that government cannot target a religious organization and its employees and clients for unfair and unequal treatment by intentionally threatening to enforce the Statute against a ministry organization, its employees and guests, to whom it clearly did not apply, and in a way to frustrate and burden the Mission's free exercise of religion, assembly, association, corporate prayer and worship.

181.   Plaintiff Mission's religious liberty rights are so clearly established by preexisting law that a reasonable Sheriff would understand that what he is doing violates those rights.

182. The actions of Defendant Sharp caused harm to Plaintiff, for the loss of the services of its employee, for the loss of use of its facilities, and for other losses, in violation of 42 U.S.C. §1983.

183. Plaintiff's losses and harms were proximately caused by Defendant Sharp's actions taken under color of state law.

## Prayer for Relief

184. Plaintiff Mission seeks a declaratory judgment in its favor and against all Defendants on all Counts, as follows:

A. Declare that the Mission's ministry is religious exercise, including its ministry to Affected Persons as guests or employees.

B. Declare §566.150.1, RSMo., is unconstitutionally vague on its face with respect to its prohibition on being present within a 500-foot zone, and whether loitering is a necessary element for said prohibition; or alternatively.

C. Declare §566.150.1, RSMo., is unconstitutionally vague on its face with respect to its prohibition on loitering within a 500-foot zone, which term is undefined and provides unfettered discretion for law enforcement to interpret without reasonable notice or opportunity to be heard for Plaintiff; or alternatively.

D. Declare §566.150, RSMo., is unconstitutional as applied to Plaintiff, its employees, and guests, in violation of the First and Fourteenth Amendments of the U.S. Constitution, under the circumstances herein described.

E. Declare that Defendants' interpretations, policies and practices, as alleged herein, violate RLUIPA, including the provisions for substantial burden, discrimination, equal terms, or unreasonable limitations.

F. Declare the Defendants interpretations, policies and practices, as alleged herein, violate Missouri's RFRA.

G. Declare the interpretations, policies and practices of the Defendants, as alleged herein, violate the Missouri Constitution, Article I, Sections 2, 5, 9, and 10.

H. Declare that Plaintiff's religious liberty rights were so clear according to preexisting law, that Defendant Sharp knew or reasonably should have known that his actions violated constitutional rights.

185. Upon proper motion, Plaintiff Mission seeks a preliminary and permanent injunction in favor of Plaintiff and against all Defendants, which:

A. Enjoin Defendants from enforcing or threatening to enforce §566.150.1, RSMo., against Plaintiff or any others similarly situated, on grounds that the Statute is void for vagueness, in violation of the U.S. Constitution and the Missouri Constitution.

B. Enjoin Defendants from enforcing or threatening to enforce §566.150.1, RSMo., against Plaintiff, its employees or guests, while they are present on Mission premises and are engaged in work, religious worship, teaching or assembly, seeking ministry help from Plaintiff, or any other lawful purpose.

C. Enjoin Defendants from imposing a substantial burden on religious exercise, unequal terms, discrimination, or unreasonable limitations on the religious exercise of the Mission, its employees, and its guests, that are not narrowly tailored to further a compelling governmental interest; and

    1. Require Defendants, its officers, employees, agents, successors, and all other persons in concert or participation with them, to take such actions as may be necessary to restore, as nearly as practicable, the Mission to the position it would have been in but for the Defendants' unlawful conduct; and

    2. Require Defendants, their officers, employees, agents, successors and all other persons acting in concert or participation with them, to take such actions as may be necessary to prevent the recurrence of such unlawful conduct in the future, including but not limited to, providing RLUIPA and RFRA training to Defendants' personnel, establishing procedures to address complaints of RLUIPA and RFRA violations, and maintaining records and submitting reports relating to RLUIPA and RFRA compliance.

186. Plaintiff seeks judgment on Count XIII against Defendant Mike Sharp in his individual capacity, for nominal damages of $10.00, and for Plaintiff's actual damages, in an amount to be determined by a jury.

187.    Plaintiff seeks an Order that all Defendants pay to Plaintiff reasonable attorney fees and costs pursuant to 42 U.S.C. §1988 and the attorney fee provision of the Religious Land Use and Institutionalized Persons Act of 2000; and

188.    Plaintiff seeks an Order for such other relief as the Court deems just and equitable in these premises.

## Jury Demand

Plaintiff Mission hereby requests a trial by jury on all issues so triable.

Respectfully submitted,

**Law Offices of Jonathan R. Whitehead, LLC**

/s/ Jonathan R. Whitehead
Jonathan R. Whitehead,  Mo. 56848
229 S.E. Douglas St., Ste. 210
Lee′s Summit, Mo 64063
816.398.8305 - Phone
816.278.9131 – Fax
Jon@WhiteheadLawLLC.com
**Attorney for Plaintiff City Union Mission, Inc.**